**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **HNHC MANAGEMENT, LLC,**<br>**Plaintiff,**<br><br>**v.**<br><br>**GIVING BETTER LIVES, LLC, and DYSHEA UPSHAW,**<br>**Defendants.** | **CIVIL ACTION**<br><br><br><br>**NO. 25-5737** |

**MEMORANDUM**

**HODGE, J.** **August 28, 2026**

Before the Court is Defendants Giving Better Lives, LLC ("GBL") and Dyshea Upshaw's ("Upshaw") (collectively, "Defendants") Motion to Dismiss Counts II–IV of the Amended Complaint (ECF No. 12 (the "Motion")), Plaintiff HNHC Management, LLC's ("HNHC") opposition thereto (ECF No. 13 (the "Opposition")), and Defendants' reply in support (ECF No. 14). For the following reasons, the Motion is granted.

## I. BACKGROUND

### A. Factual Background[1]

In considering the facts, the Court accepts all well-pleaded facts in HNHC's Amended Complaint (ECF No. 10) as true. GBL is a New Jersey-based company that operates a behavioral health clinic in Bound Brook, New Jersey ("Bound Brook Clinic"). (ECF No. 10 ¶¶ 2, 11; ECF No. 10-1 at 2.[2]) The Bound Brook Clinic uses "Applied Behavioral Analysis" principles to provide

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.
[2] HNHC attaches the purported agreement between HNHC and GBL as an exhibit to the Amended Complaint (ECF No. 10-1). The Court may consider the agreement at the motion to dismiss stage. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.").

services to clients between the ages of two and eighteen. (ECF No. 10-1 at 2.) Upshaw is GBL's president and sole officer (ECF No. 10 ¶ 35), and she oversees the Bound Brook Clinic's day-to-day activities. (*Id.*; ECF No. 10-1 at 2.)

On November 6, 2024, HNHC entered into a partnership agreement ("Agreement") with Upshaw regarding the operational responsibilities and ownership of GBL. (ECF No. 10 ¶ 6.) Pursuant to the Agreement, HNHC made a $150,000 capital contribution to GBL. (*Id.* ¶ 9.) This initial investment was to be used for GBL's existing debt, with any remaining amount earmarked for broader business development and expenses. (*Id.* ¶¶ 7, 9.) In exchange for its contribution, HNHC received a partnership interest in GBL, entitling it to corporate distributions and the right to access GBL's corporate records. (*Id.* ¶¶ 8, 10.) HNHC characterizes its partnership interest in GBL as one of "equity." (*Id.* ¶ 10.) Upon execution of the Agreement, HNHC became a partner in and assumed fifty percent financial responsibility for the Bound Brook Clinic. (*Id.* ¶¶ 11–12.) As a partner in the Bound Brook Clinic, HNHC was entitled to certain rights, including distributions and audits. (*Id.* ¶ 12.) The Agreement also required that all financial records be kept at GBL's corporate office and available for both partners' inspection. (*Id.* ¶ 13.)

HNHC asserts, upon information or belief, that Upshaw has "issued distributions to herself and/or other family members for personal expenses without the approval of Plaintiff" and "withdrawn monies from the business for personal expenses, trips and other expenditures not agreed upon by the parties." (*Id.* ¶¶ 14–15.) In response to this alleged conduct, HNHC sent Upshaw a demand letter on August 11, 2025. (*Id.* ¶¶ 16–17.) HNHC demanded that Upshaw provide it with full access to the corporate accounting and books, and cease misappropriating

corporate funds for personal gain.[3] (*Id.*) HNHC contends that Upshaw refused these demands and continued making unauthorized expenditures without HNHC's approval or knowledge. (*Id.* ¶ 18.) HNHC has filed suit to redress these "continual[]" violations of the Agreement. (*Id.*)

### B. Procedural History

HNHC filed its initial Complaint on October 3, 2025. (ECF No. 1.) On January 9, 2026, Defendants filed a Motion to Dismiss the Complaint. (ECF No. 9.) On January 21, 2026, HNHC filed an Amended Complaint (ECF No. 10), and the Court denied as moot Defendants' Motion to Dismiss. (ECF No. 11.) The Amended Complaint brings claims for: breach of contract (Count I); tortious interference with contract (Count II); minority shareholder oppression under Pennsylvania law (Count III); and a statutory demand for books and records under both Pennsylvania and New Jersey law (Count IV). (ECF No. 10 ¶¶ 19–46.) On February 3, 2026, Defendants filed a Motion to Dismiss Counts II–IV of the Amended Complaint. (ECF No. 12.) On February 19, 2026, HNHC filed its Opposition. (ECF No. 13.) Defendants filed their reply in support on February 24, 2026. (ECF No. 14.)

On June 10, 2026, the Court ordered supplemental briefing from HNHC regarding the citizenship of the parties that establishes the Court's subject matter jurisdiction. (ECF No. 17.) On June 15, 2026, HNHC filed its supplemental brief. (ECF No. 18.) On June 22, 2026, Defendants filed their response. (ECF No. 19.) Defendants' Motion to Dismiss (ECF No. 12) is now ripe.

---

[3] HNHC states that the demand letter is attached as "Exhibit B" to the Amended Complaint (ECF No. 10 ¶ 16), but no such exhibit exists. Defendants attach a purported copy of the demand letter with their Motion to Dismiss. (ECF No. 12-2.) The Court has reviewed this attachment for the limited purpose of determining the demand letter's content, deeming the letter integral or explicitly relied upon in the complaint, and thus does not convert the Motion into one for summary judgment on this basis. *See Schmidt*, 770 F.3d at 249 (permitting the review of certain documents "integral to or explicitly relied upon in the complaint" at the motion to dismiss stage (citation modified)).

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must put forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). This requires more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).

Applying the principles of *Twombly* and *Iqbal*, the Third Circuit has articulated a three-part analysis to determine whether a complaint will survive a Rule 12(b)(6) motion. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). A court is tasked with: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

## III. DISCUSSION

### A. Subject Matter Jurisdiction

Before addressing Defendants' Motion to Dismiss, the Court must fulfill its "independent obligation to determine whether subject-matter jurisdiction exists." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). HNHC filed suit in this Court upon the grounds of diversity jurisdiction, asserting in the Amended Complaint that GBL is a citizen of New Jersey and HNHC is a citizen of Pennsylvania. (ECF No. 10 ¶¶ 1–2, 4.) HNHC further stated that Upshaw is GBL's "sole

officer." (*Id.* ¶¶ 34–35.) But HNHC did not affirmatively allege in the Amended Complaint the citizenship of Upshaw or HNHC's sole member, Haroon Kamal ("Kamal"). Because "the citizenship of an LLC is determined by the citizenship of each of its members," *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010), the Court ordered supplemental briefing from HNHC to ascertain the citizenship of Upshaw and Kamal. (ECF No. 17).

HNHC's supplemental brief, and attached signed verification, asserts that Upshaw is a New Jersey citizen and Kamal is a Pennsylvania citizen. (ECF No. 18 at 1, 3.) Defendants filed a response which appears to challenge HNHC's declaration of its own citizenship. (*See generally* ECF No. 19.) Defendants contend that HNHC has failed to provide "any" information relevant to the citizenship inquiry. (*Id.* at 2.) But that contention is not supported by the record, which now includes HNHC's supplemental submission. (ECF No. 18.) HNHC declares that its sole member, Kamal, is a resident of and domiciled in Pennsylvania, and that HNHC's principal place of business is in Pennsylvania. (*Id.* at 1, 3; ECF No. 10 ¶¶ 1, 4.) This supports HNHC's assertion that it is a Pennsylvania citizen. *See McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 286 (3d Cir. 2006) ("Citizenship is synonymous with domicile . . . . In determining an individual's domicile, a court considers several factors, including 'declarations . . . house of residence, and place of business.'" (quoting *Krasnov v. Dinan*, 465 F.2d 1298, 1301 (3d Cir. 1972)). Defendants present no evidence in opposition, and the Court therefore has no reason to doubt HNHC's asserted citizenship.

Given the facts above, the Court has sufficient information to find complete diversity between the parties. *See Sun Printing & Publ'g Ass'n v. Edwards*, 194 U.S. 377, 382 (1904) (explaining that a court may review the whole record to cure a defective assertion of citizenship and "if the requisite citizenship is anywhere expressly averred . . . that is sufficient"). The Court

will treat HNHC's submission of the supplemental jurisdictional information as an amendment to the Amended Complaint. *See* 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."); *Pasternack v. Klein*, 751 F. App'x 332, 335 n.3 (3d Cir. 2018) (per curiam) (explaining the broad purpose of § 1653 and permitting amendment of "the complaint's allegations of jurisdiction to include [plaintiff's] averments on appeal"). The Court further notes that HNHC's initial failure to plead the citizenship of Upshaw and Kamal does not reflect a defect in the underlying jurisdictional facts as they existed at the time the Amended Complaint was filed. *See USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 205–06 (3d Cir. 2003) (finding that the district court acted within its sound discretion in treating a pleading as amended under § 1653 where the amendment "did not add new jurisdictional facts and did not rely on a basis of jurisdiction different from that originally alleged").

**B. Waiver of Counts II and III**

Defendants seek dismissal of Counts II and III, arguing that HNHC fails to plead specific facts in support of these claims and instead relies on legal conclusions. (ECF No. 12 at 6–8.) Additionally, with respect to Court II (tortious interference with contract), Defendants assert that HNHC fails to identify any contract with which Defendants allegedly interfered. (*Id.* at 8.) Defendants also contend that Count III (minority shareholder oppression) should be dismissed because HNHC is not a shareholder of GBL and the Agreement HNHC seeks to enforce is a *partnership* agreement. (*Id.* at 10.)

The Court finds that HNHC has waived any argument in support of Counts II and III of the Amended Complaint. HNHC's entire Opposition only addresses Defendants' arguments as to the dismissal of Count IV. (*See generally* ECF No. 13.) Although HNHC requests that the entire Motion be denied (*id.* at 1), it offers no response (substantive or otherwise) to Defendants' specific

challenges to Counts II and III. Defendants emphasize this omission in their reply in support of the Motion. (ECF No. 14 at 2.) When a plaintiff fails to substantively respond to specific arguments raised in a motion to dismiss, courts routinely deem the unaddressed claims abandoned or waived. *See, e.g.*, *Levy-Tatum v. Navient Sols., Inc.*, 183 F. Supp. 3d 701, 712 (E.D. Pa. 2016) ("[Plaintiff], by filing a response in opposition to [defendant's] motion to dismiss that addressed some, but not all, of [defendant's] arguments, abandoned those claims upon which she failed to make any substantive arguments") (collecting cases); *Barrick v. Perry Cnty. Prison*, No. 22-cv-1432, 2023 WL 4631658, at *1 n.2 (M.D. Pa. July 19, 2023) ("A brief in opposition to a motion to dismiss that fails to respond to a substantive argument to dismiss a particular claim results in the waiver or abandonment of that claim." (citing *Dreibelbis v. Scholton*, 274 F. App'x 183, 185 (3d Cir. 2008))).

Because HNHC failed to substantively respond to Defendants' arguments for dismissal, the Court dismisses Counts II and III with prejudice.

**C. Count IV**

HNHC asserts a demand for GBL's books and records under one Pennsylvania and two New Jersey statutes, each of which grant rights of access to corporate books and records based on status as a corporate shareholder or member in an LLC. (ECF No. 10 ¶¶ 43–44.) First, HNHC demands access to GBL's company records under 15 Pa. C.S. § 1508 (*id.* ¶ 43), which is the section of the Pennsylvania Business Corporation Law ("PBCL") governing the inspection rights of shareholders. *See* 15 Pa. C.S. § 1508; *Edenfield v. ECM Energy Servs., Inc.*, 300 A.3d 506, 509–11 (Pa. Super. Ct. 2023). HNHC then cites N.J. Stat. Ann. § 14A:5-28 (ECF No. 10 ¶ 44), the section of the New Jersey Business Corporation Act ("NJBCA") that likewise delineates shareholders' inspection rights. *See* N.J. Stat. Ann. § 14A:5-28; *Cain v. Merck & Co.*, 1 A.3d 834, 839–40 (N.J. Super. Ct. App. Div. 2010). Finally, HNHC asserts a right to records under N.J. Stat.

Ann. § 42:2C-40 (ECF No. 10 ¶ 44), the section of the New Jersey Revised Uniform Limited Liability Company Act ("NJRULLCA") providing inspection rights to individual members of an LLC. *See* N.J. Stat. Ann. § 42:2C-40; *Shui v. Wang*, No. 23-cv-2620, 2023 WL 8520778, at *5 (D.N.J. Dec. 8, 2023). Defendants contend that Count IV fails under each and all of these statutes because HNHC is not a shareholder in GBL and the parties are instead bound by a partnership agreement. (ECF No. 12 at 10.)

**1. Choice of Law**

HNHC asserts Count IV under both Pennsylvania and New Jersey Law. (ECF No. 10 ¶¶ 43–44.) It is well established that "[a] federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state." *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir. 1994) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941)). As such, Pennsylvania law governs the Court's choice of law analysis. Pennsylvania has codified the "internal affairs doctrine," which directs courts to apply the law of the state where an entity was formed to matters involving that entity's internal affairs. *See Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 179 n.10 (3d Cir. 2005); 15 Pa. C.S. § 402(a)(1) ("The laws of the jurisdiction of formation of a foreign association govern . . . [t]he internal affairs of the association"); *see also CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 78 (1987) (describing the doctrine as "designed to make sure that the law of only one state shall govern the internal affairs of a corporation or other association").

In Count IV, HNHC alleges that Defendants wrongfully withheld access to GBL's books and records in violation of HNHC's rights as "a fifty percent (50%) owner/member of [GBL]." (ECF No. 10 ¶¶ 41, 43–46.) Thus, Count IV turns on the rights and obligations arising from HNHC's relationship with GBL, specifically GBL's obligation to honor shareholders' or LLC

members' inspection rights. As a result, Count IV implicates GBL's internal affairs. *See Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982) (describing internal affairs as "matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders"); *Colvin v. Somat Corp.*, 326 A.2d 590, 592 n.1 (Pa. Super. Ct. 1974) (explaining that conduct affecting a plaintiff in his capacity as a member of the corporation concerns the corporation's internal affairs); *cf. Kahn v. Am. Cone & Pretzel Co.*, 74 A.2d 160, 162 (Pa. 1950) ("There is no arbitrary line of demarcation, however, between what does and what does not constitute the character of internal aff[a]irs . . . ."). Count IV is "peculiar" to HNHC's corporate role in GBL because it concerns an alleged duty that GBL owed to HNHC by virtue of that role. *See DelphX Corp. v. Fondren*, 600 F. Supp. 3d 540, 548 n.44 (E.D. Pa. 2022) (explaining that plaintiff's claims were "peculiar" to defendant's former position as a director because they were tied to the duties of that role).

Because GBL is a New Jersey-formed LLC (ECF No. 10 ¶ 2; ECF No. 18 at 1) and Count IV implicates GBL's internal affairs, New Jersey law will govern the remainder of the Court's analysis of this claim.[4] *See Miller v. Native Link Constr., LLC*, Civil Action No. 15-1605, 2017 WL 3536175, at *9, *14 (W.D. Pa. Aug. 17, 2017) (applying the internal affairs doctrine to an LLC); *Robertshaw v. Pudles*, Civil Action No. 11–7353, 2013 WL 3976284, at *17 (E.D. Pa. Aug.

[4] Pennsylvania's location exception to the internal affairs doctrine—which allows courts to enforce Pennsylvania statutes regarding the inspection of books and records if the materials being sought are physically located within the Commonwealth, *see Perilstein v. United Glass Corp.*, 213 F.R.D. 252, 255 (E.D. Pa. 2003) (citing *Kahn*, 74 A.2d at 162)—is likely inapplicable. HNHC declares that "[t]he Agreement requires all financial records be kept at the corporate office and available for both partners' access," and further asserts that GBL has "a principal address of 190 N. Evergreen Ave., Suite 205, Woodbury, NJ 08012." (ECF No. 10 ¶¶ 13, 2.) In addition, like GBL's corporate office, the Bound Brook Clinic is located in New Jersey. (*Id.* ¶ 11.) On the present record, it appears to the Court that all of GBL's books and records that HNHC seeks are physically located in New Jersey.

5, 2013) ("[T]he conflicts practice of both state and federal courts has consistently been to apply the law of the state of incorporation to claims relating to the entire gamut of internal corporate affairs." (citation modified)). Indeed, the parties themselves contemplated the application of New Jersey law for any disputes that arose from their partnership, as evinced by the formation clause of the Agreement. (ECF No. 10-1 at 1 ("The Partnership is hereby created in accordance with the laws of the State of New Jersey.").) HNHC's assertion of Count IV under New Jersey law in the Amended Complaint (ECF No. 10 ¶ 44) likewise reflects this expectation.[5]

### 2. HNHC's Relationship to GBL and the Bound Brook Clinic

Because each of the statutory claims in Count IV are status based, the Court must first determine whether HNHC has plausibly alleged its legal status as a shareholder or member in GBL such that it may invoke rights under any of these statutes. Defendants contend that HNHC's interpretation of the Agreement "demonstrates a fundamental misunderstanding of the legal distinctions between partnership and shareholder interest." (ECF No. 12 at 11.) They argue that the Agreement "unambiguously states the Parties are partners in a limited partnership for the [Bound Brook Clinic]; there is no discussion about equity interest in GBL." (*Id.* at 10.)

---

[5] To the extent that HNHC's statutory claims seek to vindicate rights created by virtue of HNHC's role as a partner in GBL, the Court notes that Pennsylvania law would still counsel the application of New Jersey statutes. *See* 15 Pa. C.S. § 8614(a) ("The internal affairs of a partnership and the liability of a partner as a partner for the debts, obligations or other liabilities of the partnership are governed by: . . . in the case of a partnership that is not a limited liability partnership, the laws of: . . . (i) the jurisdiction chosen by a provision of the partnership agreement in record form; or (ii) the jurisdiction in which the partnership has its principal office if there is no choice of law under subparagraph (i)."); *MBC Dev., LP v. Miller*, 316 A.3d 51, 68 n.5 (Pa. 2024) (Donohue, J., concurring) (explaining that § 8614 sets the governing law for the internal affairs of business partnerships). Here, the Agreement states that the partnership is created "in accordance with the laws of New Jersey" and further notes that GBL and the Bound Brook Clinic are located in New Jersey. (ECF No. 10-1 at 1.) HNHC has not brought a statutory claim under New Jersey law regarding a partner's right to access books and records.

The Court finds that HNHC has failed to plausibly assert that it is a shareholder or member in GBL or the Bound Brook Clinic. In the Amended Complaint, HNHC pleads facts supporting only its status as a partner in GBL and/or the Bound Brook Clinic. HNHC itself uses the terms "partner" and "partnership" throughout the Amended Complaint. (*See e.g.*, ECF No. 10 ¶¶ 6, 8, 11, 12, 13.) In fact, while the Amended Complaint is somewhat unclear as to whether HNHC alleges itself to be a partner in GBL or the Bound Brook Clinic, at no point in the "Statement of Facts" section does HNHC refer to itself as anything other than a partner. (*Compare id.* ¶ 8 ("The parties further agreed, Plaintiff would receive partnership interests *in GBL* . . . [.]" (emphasis added)), *with id.* ¶ 12 ("Once the parties executed the Agreement, Plaintiff was a partner *of Bound Brook* . . . ." (emphasis added)).) Only in Counts III and IV does HNHC shift to labeling itself a "shareholder" of GBL. (*Id.* ¶¶ 33 ("HNHC owns fifty (50) percent of the Company's shares."), 34, 37–38, 43–44.) Under Count IV, HNHC further brands itself as a "member" of GBL. (*Id.* ¶ 41.) Altogether, HNHC claims to hold three distinct legal statuses with respect to GBL: partner, shareholder, *and* member. Only one of these statuses is actually supported by the majority of the allegations in the Amended Complaint.

A review of the Agreement that HNHC attached[6] to the Amended Complaint further compels the Court to reach this conclusion. At the outset, the Agreement describes the parties' relationship in terms of a partnership, stating: "This Location *Partnership Agreement*, dated 11-6-2024 is hereby made and entered into by and between the following *Partners*: [HNHC and GBL]." (ECF No. 10-1 at 1 (emphasis added).) The Agreement further states that the parties "wish to

[6] The Court notes that Defendants dispute the authenticity of the Agreement that HNHC attached as an exhibit to the Amended Complaint. (ECF No. 12 at 2 n.2.) However, given that Defendants "acknowledge Plaintiff's version of the contract for sake of responding to the Amended Complaint," (*id.*), the Court reviews that exhibit for the purposes of deciding the Motion without making a determination as to authenticity.

associate themselves as location partners" in the Bound Brook Clinic. (*Id.*) Throughout the Agreement, the parties repeatedly use the terms "partner," "location partner," and "partnership" to describe their relationship.[7] (*See generally id.*) The terms "shareholder" and "member" are never used in the Agreement, and there is no discussion of the core features associated with those distinct legal relationships.

Therefore, HNHC's assertions in the Amended Complaint claiming either shareholder or member status are merely bald, conclusory, and completely divorced from the language in the Agreement, such that the Court is not required to credit them as pleadings in support of HNHC's claims. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) ("[A] court need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." (citation modified)). Where HNHC's allegations simply recite the roles defined in provisions of the PBCL, NJBCA, and NJRULLCA, they "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Thus, HNHC has failed to plead sufficient facts establishing plausible grounds for the Court to infer that it acquired shareholder or member status in GBL or the Bound Brook Clinic. *See Twombly*, 550 U.S. at 556; *Iqbal*, 556 U.S. at 678.

**3. Claims Under New Jersey Statutes**

HNHC fails to plausibly allege a claim under either New Jersey statute, the NJBCA or the NJRULLCA. Under the NJBCA, shareholders have the right to inspect certain corporate records. *See* N.J. Stat. Ann. § 14A:5-28(3). The NJBCA defines a shareholder as "one who is a holder of

[7] The Agreement could be read as making HNHC a partner of GBL itself or as creating a location partnership operating under GBL's name. (*See* ECF No. 10-1 at 1 ("The Partnership being created by this Agreement shall operate under Giving Better Lives LLC. The entirety of the business of the Partnership shall be conducted under said name.").) This potential ambiguity does not alter the Court's core analysis: under either reading, the Agreement frames HNHC's status in terms of a partnership, not as a shareholder or member.

record of shares in a corporation." N.J. Stat. Ann. § 14A:1-2.1(l). As explained above, HNHC has not sufficiently pleaded that it has any legal status beyond that of a partner in GBL or the Bound Brook Clinic. Because shareholder status is the predicate for relief under this provision, Count IV is unsupported. HNHC's reliance on the NJRULLCA fares no better. This provision confers inspection rights upon "members," which are defined as those "that ha[ve] become a member of a limited liability company pursuant to [N.J. Stat. Ann. § 42:2C-31]."[8] N.J. Stat. Ann. § 42:2C-40(a)(1); N.J. Stat. Ann. § 42:2C-2. HNHC's failure to plausibly plead anything other than partner status again means that this definition does not apply, and HNHC's claim under the NJRULLCA fails. The Court will therefore grant the Motion to Dismiss as to Count IV. Because HNHC may plead additional facts supporting this claim, the Court dismisses the claim without prejudice.[9]

**D. Forms of Relief**

Defendants also move to dismiss several forms of relief requested in the Amended Complaint: HNHC's requests for attorney's fees and punitive damages should it prevail on Count

---

[8] Because GBL was already formed at the time the parties entered into the Agreement, HNHC would have needed to plead sufficient information showing that one of the conditions in N.J. Stat. Ann. § 42:2C-31(c) was met and provided HNHC with member status. It has not done so.

[9] Because New Jersey law governs the Court's analysis of Count IV, *supra* Part III(C)(1), HNHC's claim under 15 Pa. C.S. § 1508 is dismissed. *See Mukamel v. Onexxx Prod. & Expl. Corp.*, No. 2:25-CV-01302, 2026 WL 2096838, *3 (W.D. Pa. July 21, 2026) (dismissing counts invoking Pennsylvania corporate statutes because the internal affairs doctrine required the application of Delaware law). The Court notes that even if Pennsylvania law did apply, the claim would still fail. The PBCL provides inspection rights to shareholders, *see* 15 Pa. C.S. § 1508(b), which are defined as "record holder[s] or record owner[s] of shares of a corporation, including a subscriber to shares." 15 Pa. C.S. § 1103; *see Edenfield*, 300 A.3d at 511. HNHC has failed to plausibly allege that it is a shareholder of GBL, so it does not meet this statutory predicate either. In its Opposition, for the first time, HNHC cites 15 Pa. C.S. § 8446. (ECF No. 13 at 1, 5.) This provision, which is part of Pennsylvania's Uniform Partnership Act, governs the inspection rights of partners. But HNHC did not allege this provision in the Amended Complaint and the Court will not consider a statute raised for the first time in an opposition. *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

I; injunctive relief involving Upshaw and a third party; and the appointment of a custodian under 15 Pa. C.S. § 1767. (ECF No. 12 at 12–13; ECF No. 10 at 4, 8.) HNHC's Opposition does not address Defendants' arguments with respect to the dismissal of these forms of relief.

**1. Attorney's Fees and Punitive Damages for Breach of Contract**

"Under Pennsylvania choice-of-law rules, the first step involves assessing whether a conflict exists between the substantive law of multiple jurisdictions." *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022). "If two jurisdictions' laws are the same, then there is no *conflict* at all, and a choice of law analysis is unnecessary." *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007).

Although HNHC does not allege which law should apply to Count I, the Court recognizes that there is no conflict between Pennsylvania and New Jersey law governing the award of attorney's fees for a breach of contract claim. Both Pennsylvania and New Jersey follow the American Rule, which is a foundational principle that generally each party bears the cost of their own legal representation. *See McMullen v. Kutz*, 985 A.2d 769, 775 (Pa. 2009); *Walker v. Giuffre*, 35 A.3d 1177, 1179 (N.J. 2012). Absent a clear contractual agreement, express statutory authorization, or other established exception permitting attorney's fees, the American Rule holds. *See McMullen*, 985 A.2d at 775; *Walker*, 35 A.3d at 1179. HNHC has not pleaded the existence of any such exception or raised one in its Opposition, and as such, Pennsylvania law does not permit the award of attorney's fees for Count I. *See Yellow Transp., Inc. v. DM Transp. Mgmt. Servs., Inc.*, No. 06-cv-1517, 2006 WL 2871745, at *4 (E.D. Pa. July 14, 2006). This pleading deficiency also makes the award impermissible under New Jersey law. *See Am. Rubber & Metal Hose Co. v. Strahman Valves, Inc.*, Civil Action No. 11–1279, 2011 WL 3022243, at *9 (D.N.J. July 22, 2011). There is also no conflict between Pennsylvania and New Jersey law regarding the

availability of punitive damages for Count I. Under Pennsylvania law, punitive damages are not recoverable for a breach of contract claim. *See Yellow Transp.*, 2006 WL 2871745, at *4. Recovery is also barred under New Jersey law absent a showing that the defendant breached a duty independent of that created by the contract. *See Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1194 (3d Cir. 1993). HNHC has not raised any potential exceptions to these general rules.

Because attorney's fees and punitive damages are not permitted under either Pennsylvania or New Jersey law for Count I, the Court will grant the Motion as to these two forms of relief for the breach of contract claim.

**2. Injunctive Relief**

Defendants also seek to dismiss HNHC's request for the Court to "[e]njoin[] Ms. Upshaw from exercising any control over Bricklight's accounting, financial, or payroll systems, or its bank accounts or funds." (ECF No. 10 at 8; ECF No. 12 at 12–13.) Defendants assert that they are "unaware of what Bricklight is and do not exercise control over it." (ECF No. 12 at 13.) The Court finds that dismissal is premature. At this stage, it is sufficient that HNHC has plausibly alleged a breach of contract and that injunctive relief is a form of relief available for that breach. *See Zodda v. Nat'l Union Fire Ins. Co. of Pittsburgh*, Civil Case No. 13–7738, 2014 WL 1577694, at *6 (D.N.J. Apr. 21, 2014) (denying motion to dismiss as to plaintiff's request for punitive damages where such damages were available by statute for the acts alleged).

**3. Custodian Appointment Under PBCL**

HNHC seeks the appointment of a custodian pursuant to 15 Pa. C.S. § 1767—a section of the PBCL. (ECF No. 10 at 8.) Shareholder status is a predicate to this relief under the PBCL. *See* 15 Pa. C.S. § 1767(a) ("[U]pon application of *any shareholder*, the court may appoint one or more persons to be custodians of and for any business corporation . . . ." (emphasis added)). Because

HNHC has failed to plausibly allege that it is a shareholder, *supra* Part III(C)(2), it cannot invoke this provision. Accordingly, the Court grants the Motion as to this form of relief.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted. An appropriate Order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

**HODGE, KELLEY B., J.**